## CITY OF MISHAWAKA, IND. v. SANTUCCI CONST. CO. et al.

### No. 10776.

United States Court of Appeals, Seventh Circuit.

June 23, 1953.

Albert L. Doyle, Mishawaka, Ind., M. Edward Doran, South Bend, Ind., for appellant.

James H. Cartwright and Edmund J. Kenny, Chicago, Ill., Winston, Strawn, Black & Towner, Chicago, Ill., Seebirt, Oare & Deahl, South Bend, Ind., of counsel, for appellees.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

The City of Mishawaka, Indiana (hereinafter called City), brought this suit against defendant construction company and its surety for damages for failure of the construction company (for convenience, hereinafter referred to as defendant) to execute and carry out certain contracts with the City based upon construction bids submitted to the City by it. The trial was to the court which found the issues favorably to defendant and dismissed the action.

On March 6, 1950, the Board of Public Works of the City recommended to the Common Council that work be commenced upon the construction of what was known as "Sewage Treatment Works and Sewer Project." On March 20, 1950, an ordinance was enacted which authorized the construction of the project and the taking of bids. Notices to bidders were thereafter published, which contained the statement that no bid could be withdrawn for a period of

60 days from the opening thereof, but also stated that the City reserved the right to reject any and all bids.

The construction work was divided into divisions and separate contracts were contemplated for each division. The bid forms upon which the bidders were required to submit their bids required that a unit price be stated for each item of work to be performed under each contract, and at the end of the form there was a space for the bidder to state his total price for performance of all the items under that contract.

Santucci filled in the unit prices but did not fill in a total figure on any of defendant's three bids individually, although every other bidder did so. As a separate proposal each bidder had an opportunity to state what reduction in the total price of the three contracts would be allowed if the bidder were awarded all three. On this sheet Santucci inserted a figure which he had computed to be the aggregate of the unit prices on all three of defendant's bids and agreed that said price would be reduced by 1%. The forms also required each bidder to fill out an alternate bid on each of the three contracts individually, based upon the condition that the City would furnish the necessary pipe. Santucci did not fill out an alternate bid form for any of the three contracts individually, although that practice was followed by other bidders. On that sheet Santucci said he would reduce defendant's bid by allowing a deduction for the actual cost of the materials purchased by the City.

May 18, 1950, at 10:00 A.M. was fixed as the time for the opening of bids. Several hours earlier on that day Nicholas Santucci, president of defendant, examined the site for the proposed sewage treatment works and discovered that performance of contract No. 1 would be greatly hampered and made much more expensive because the site was low and water would interfere with construction. At that time all of the blanks for unit prices had been filled in, in ink, on the proposals which he intended to file as to Contracts No. 1, No. 2, and No. 3, Division A, except that the first items on the latter two bids were blank, but had pencilled figures written on the margin. In order to make up for the extra cost which he figured defendant would incur in carrying out Contract No. 1, Santucci substantially raised the first item in both Contracts No. 2 and No. 3.

The Board of Public Works met in the Council Chamber at the scheduled time for opening the bids. Mr. Santucci testified that on the way upstairs he informed the consulting engineer, Mr. Cole, that his company's three bids were to be combined and that it would not accept one contract without being awarded the other two. The Board of Public Works proceeded to open bids and the bid of defendant was the second one opened. Before it was read, however, Mr. Santucci stepped up to the table where the Mayor and Board members were seated, and stated that the bid of his company was for all three contracts or none.

After all of the bids had been opened, they were referred to Consulting Engineer Cole, and Nicholas Santucci returned to Skokie, Illinois, where the principal office of defendant is located. On the following day he sent a telegram and a registered letter to the City referring to his statements at the time that the bids were opened, and restating that defendant's bid was for all three contracts or none.

The net bid of defendant for the three contracts was $938,916.14. The next lowest combination bid was $981,770.70. All bids were referred to Charles W. Cole, the consulting engineer. On June 12, Cole reported to the Board of Public Works, giving his tabulation and analysis of the various bids. He noted that defendant's bid was contingent upon it being awarded all three contracts, and also that defendant's bid for said three contracts was lower than any combination of bids by other bidders. Cole recommended that the three contracts be awarded to defendant. This was not done.

On June 12, 1950, the City Council passed an ordinance authorizing the issuance of $2,500,000 of revenue bonds to be used in payment of the construction costs of the project. Such bonds were thereafter sold, and by July 14, 1950, the City had the proceeds from such sale on hand. On said date the City sent a notice to defendant that only Contracts No. 1 and No. 2, Division A, had been awarded to it, and demanded that con-

tracts be executed in accordance with defendant's construction bids, and be delivered to the Board of Public Works by July 21, 1950. Defendant refused to execute the contracts. The Board re-advertised for bids on Contracts No. 1 and No. 2, and finally let same at a price which exceeded the total of defendant's bids for those two contracts by $56,223.82. Plaintiff brought suit for that sum.

The district court found that Mr. Santucci intended to condition defendant's bids on Contracts No. 1, No. 2, and No. 3 on an "all or none" basis, and that the defendant company acted in good faith and within its rights in submitting its bid on that basis. The court found that the Board of Public Works was put on notice prior to the awarding of any contracts that defendant's bid was for all three contracts or none, and concluded that the City was not entitled to construe the bid of defendant as bids for Contracts No. 1 or No. 2 separately. Judgment was entered dismissing the suit.

The finding of the district court that defendant acted in good faith in attempting to submit bids on the basis of "all or none" is clearly sustained by the evidence. Although Santucci was an experienced contractor, his formal education was limited. When he inspected the site of the work in the morning of the day bids were to be opened, he realized that construction costs on Contract No. 1 would greatly exceed the figures that had already been inserted in ink on defendant's bid for that work. He did not have any other bid forms available, and the deadline was near. He reasoned that if the figures for Item No. 1 in defendant's bid on both Contracts No. 2 and No. 3 could be raised, and if the company could obtain all three contracts, the net result would be the same as if he corrected the figures in the bid for Contract No. 1. Although such procedure might seem an unusual way to meet the situation, Santucci had to act fast. Certain it is that the procedure he adopted could have been a remedy for defendant's too low bid on Contract No. 1 only on the basis that he intended as a condition of defendant's bids— that defendant be awarded all three contracts or none.

The City insists that the clause in the notice inviting bids as well as in the bid forms, that a bid may not be withdrawn for a period of 60 days from the opening thereof, is controlling. The City argues that the general rule of contracts that an offer remains subject to the control of the offerer up to the time of acceptance is not applicable. Admitting that there is a division of authority on the subject, the City urges that the following rule as stated in Vol. 43, Am.Juris., Public Works and Contracts, Sec. 62, p. 804, should be adopted: "As a general rule, at law a bidder for a public contract cannot, in the absence of special circumstances, either withdraw his bid or proposal or recover the deposit made, pursuant to the requirements of the advertisement for bids, at the time of the submission of his bid, although in equity the bidder will be protected where it would be inequitable to compel him to perform the contract or forfeit the deposit in the case of his refusal or failure to perform, and there are numerous exceptions and qualifications to the rule at law."

Until July 14, 1950, when proceeds from the sale of bonds were available, the City of Mishawaka was legally incapable of executing any contracts under Bids No. 1, No. 2 or No. 3, Division A. Burns Indiana Stats.Anno., § 48–1507. In fact up to that date the City was free to abandon the entire project without obligation to anyone. Hamer v. City of Huntington, 1939, 215 Ind. 594, 21 N.E.2d 407. The advertisement for bids stated and the bid forms provided that the City had the right to reject any and all bids. Thus at the time Santucci spoke to Cole before any bids were opened, and immediately after his bid was opened when he informed the Mayor and the Board of Public Works of his intention, there was no consideration which had passed to him which prevented the conditioning of his bids on an all or none basis. That was his intention in good faith. The City officials well knew that he so intended and they were in no way deceived or misled.

The evidence clearly sustains the district court's finding that defendant did in fact submit its bid on the basis of obtaining all three or none of the contracts in Division A, and that defendant submitted

such bid in good faith. Hence the City could not compel defendant to accept Contracts No. 1 and No. 2 while awarding Contract No. 3 to another; and the district court correctly found the issues favorably to the defendant.

The situation is different where, after the opening of bids, a bidder, then knowing the amount of the proposed bids of others, attempts to alter his bid and thus obtain a contract for himself at a more advantageous price. Here, however, Santucci was acting in good faith, and he was entirely willing that defendant accept all three contracts on the basis of the only total figure which he submitted. The district court was correct in holding that the City was not entitled under the circumstances of this case to construe defendant's bid to be for individual contracts when the City officials well knew that Santucci's intention was directly to the contrary.

The City also alleged error because the court denied its motion for a new trial on the ground of newly discovered evidence. Based upon its interpretation of Santucci's testimony, it offered to produce a handwriting expert who would testify that there were no pencil notations or erasures in the space left for unit prices to be inserted in Item No. 1 in defendant's bids for Contracts No. 2 and No. 3. It is doubtful whether the motion complied with Rule 60(b)(2), Federal Rules of Civil Procedure, 28 U.S.C.A., but in any event, we think that the proffered evidence was based on a misconception of Santucci's testimony. We approve of the court's denial of the motion.

Judgment affirmed.